IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION, UNITED | § | |
| AUTOMOBILE, AEROSPACE AND | § | |
| AGRICULTURAL IMPLEMENT | § | |
| WORKERS OF AMERICA, AFL-CIO | § | |
| and UNITED LOCAL OFFICE | § | |
| WORKERS NO. 317, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2246-N |
| | § | |
| BELL HELICOPTER TEXTRON, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses two motions for summary judgement, one filed by Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO and United Local Office Workers No. 317 (the "Union") [10], and one by Defendant Bell Helicopter Textron, Inc. ("Bell") [13]. The Court grants both motions in part and denies them in part.[1]

---

[1]The Union has also moved to strike Bell's surreply to the Union's motion for summary judgment [23]. Bell filed a single brief entitled "Defendant's Reply in Support of Its Motion for Summary Judgment/Surreply to Plaintiff's Motion for Summary Judgment." Because Bell did not move for leave to file a surreply, the Court grants the Union's motion. The Court will not entertain arguments in this brief as they relate to the Union's motion for summary judgment; it will, however, entertain such arguments as they relate to Bell's motion for summary judgment,

Additionally, Bell has moved for leave to submit an additional declaration in support of its reply brief in support of its motion for summary judgment [18]. Because the Court does not consider this declaration's contents in reaching a decision on the merits of either

## I. THE BELL-UNION LABOR DISPUTE AND ARBITRATION

Bell designs, develops, manufactures, assembles, and sells military and civilian aircraft. The Union represents about 300 Bell employees in the Dallas-Fort Worth area, including those in the Customer Support Specialist classification (the "CSS Group"), and is their exclusive bargaining representative. Bell and the Union are parties to a collective bargaining agreement ("CBA")[2] that governs the wages, hours, and other terms and conditions of the employment of the employees represented by the Union.

The CBA also incorporates the job descriptions for all unit classifications within the bargaining unit, including the CSS Group. In 2007, Bell established a new group, Performance Based Logistics (the "PBL Group"), comprised of salaried personnel outside the bargaining unit. Bell transferred some of the work previously performed by the CSS Group to the PBL Group. The Union objected to this transfer, claiming it violated the terms of the CBA.

The CBA specifies a grievance procedure and provides for binding arbitration should the grievance procedure fail. According to section 32 of the CBA, the arbitrator selected by the parties "shall be empowered to rule on all disputes pertaining to the interpretation or application of this agreement. He shall have no power to add or subtract from or modify any

---

summary judgment motion below, the Court denies Bell's motion for leave to submit the declaration as moot.

[2]There are two CBAs at issue here: one was effective from 2006 to 2009, and the other from 2009 to 2012. Bell created the PBL Group, and the Union filed its grievances, while the first CBA was in force. The Union filed this action in 2011, while the second was in force. The relevant language in both CBAs, however, is the same.

of the terms of this agreement or any other agreement made supplementary hereto." The Union filed grievances regarding the overlap between the CSS and PBL Groups. When the grievance procedure proved unsuccessful, the parties submitted, as the CBA provides, to binding arbitration. The neutral arbitrator ("Arbitrator") rendered an opinion and award ("Award") in the Union's favor, sustaining the grievance. The Award required Bell to (1) "cease and desist from having CSS duties [performed] outside the bargaining unit" (the "Cease and Desist Remedy") and (2) pay the Union's attorneys' fees (the "Attorneys' Fees Remedy").

Though the parties disagree about the details of what happened next, there is no dispute that Bell did not comply with all of the Award's requirements. The Union consequently filed this action, seeking judicial enforcement of the Award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In its answer, Bell asserted several affirmative defenses. Both parties have now moved for summary judgment as to the Union's claims and Bell's affirmative defenses.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Judicial Review of Arbitration Awards

The Fifth Circuit has repeatedly cautioned that "[j]udicial review of arbitration decisions arising from the terms of a CBA is 'narrowly limited,' and courts should afford 'great deference' to arbitration awards." *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 764-65 (5th Cir. 2007) (quoting *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005)). "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not fashioning 'his own brand of industrial justice,' the award cannot be set aside." *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, that a court is convinced the arbitrator committed serious error does not suffice to overturn his decision." *Folger Coffee Co. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. – UAW, Local Union No. 1805*, 905 F.2d 108, 110 (5th Cir. 1990) (quoting *Misco*, 484 U.S. at 38). An arbitration award, however, cannot be contrary to an unambiguous CBA provision. *Resolution Performance Prods.*, 480 F.3d at 764-65. Rather, "[t]he [a]rbitrator must show that the award is rationally inferable in some logical way from the agreement." *Beaird*, 404 F.3d at 946-47 (citing *Folger Coffee*, 905 F.2d 108 at 111).

### III. THE CEASE AND DESIST REMEDY IS ENFORCEABLE

Bell offers two arguments as to why the Cease and Desist Remedy is unenforceable: that in awarding it the Arbitrator ignored the CBA's plain language, and that it is impermissibly vague. Neither is availing.

### A. The Cease and Desist Remedy Accords with the Terms of the CBA

In a labor arbitration, the language of the parties' CBA constrains the arbitrator's powers. When an arbitrator ignores the plain language of a CBA in issuing an award, the award is unenforceable. *Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir. 1997) ("Where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference ends and vacatur or modification of the award is an appropriate remedy.") (citing *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989)). Bell asserts that the Arbitrator flouted the CBA's express terms in fashioning the Cease and Desist Remedy because the CBA (1) does not apply to the PBL Group, and (2) states that job rating specifications drawn up by Bell are not "exclusive."

### 1. The CBA Unambiguously Covers the CSS Group. – Bell maintains that the CBA unambiguously does not cover the PBL group. The CBA does not mention the PBL Group by name, but section 3 includes the following provision:

> [A]ll other job classifications not currently covered by [the Union] are excluded from coverage. If and when any new job classification is established, that is not professional, technical, supervisory or confidential in nature, . . . [Bell] and the Union will attempt to agree as to the inclusion or exclusion of such classification from the Bargaining Unit.

2006 CBA § 3 (App. to Def.'s Mot. Summ. J. [herinafter Def.'s App.] 16); 2009 CBA § 3 (Def.'s App. 120). Bell's argument, apparently, is that this passage means that the CBA does not pertain to the PBL Group and that the Arbitrator violated the CBA's express terms by ruling on a dispute related to the PBL Group. Regardless whether the CBA applies to the PBL Group, however, it undisputedly applies to the CSS Group, and it accordingly constrains Bell's actions with respect to the CSS Group. *See* 2006 CBA § 2 (Def.'s App. 16) (describing covered employees); 2009 CBA § 2 (Def.'s App. 119-20) (same). Whether or not Bell's actions with respect to the CSS Group affect the PBL Group, too, they fall under the CBA's umbrella and, consequently, the Arbitrator's jurisdiction. The Court thus finds that the Arbitrator did not violate the plain terms of the CBA's section 3 by ruling on this matter.

### *2. The Arbitrator's Interpretation of the Word "Exclusive" Is Plausible.* – Bell next

argues that the Award violates the plain text of the CBA's Appendix B. Section 96 of the CBA provides that Bell will write job specifications for new job classifications. Appendix B discusses those job specifications further:

> Job Rating Specifications covering work in each classification are provided for the general identification of the work of the classification for the primary purpose of Job Evaluation, and *are not to be considered to be exclusive* or all inclusive. An employee may be asked to perform an assignment relating to or a part of the duties although not shown under the Job Rating Specification.

2006 CBA App. B (Def.'s App. 13) (emphasis added); 2009 App. B (Def.'s App. 202). Bell contends that, since Appendix B specifies that the CSS Group's job specification – like every covered group's job specification – "is not to be considered . . . exclusive," Bell was free

ORDER – PAGE 7

under the CBA's plain text to transfer any or all of the duties listed in the CSS Group's job specification to the PBL Group or any other group.

The CBA, however, does not unambiguously grant Bell this power. First, the word "exclusive" could mean one of two things: that a particular *duty* listed in a job specification is not exclusively performed by a particular group, or that a job *specification* is not the exclusive source of a group's duties. Bell presses the former definition, but the passage as a whole suggests that the latter is correct. The provision in Appendix B primarily concerns the role of job specifications as they relate to job evaluation. In that context, it is more likely that the word "exclusive" means that an employee will be not be evaluated solely on the basis of the duties listed in the job specification, not that those duties are solely the province of the employee's group. The final sentence from Appendix B quoted above reinforces this conclusion, stating that an employee's evaluation will not be based only on the job specification applicable to that employee's group – i.e., that the job specification is not the sole source of an employee's duties.

Second, even if Bell's favored definition is correct, the fact that a duty listed in a job specification is not exclusive to a particular group within the bargaining unit does not logically give rise to the conclusion that Bell is free to transfer that duty unilaterally to a group outside the bargaining unit. The fact that a duty listed in a job specification is not exclusive to the group covered by the specification simply means that the duty may be shared by more than one group. It does not mean that Bell can transfer work from one group to another. In fact, section 96 of the CBA suggests quite the opposite: "[a]ny revision of the

ORDER – PAGE 8

existing jobs in the present job specification book maintained by [Bell] will be handled and considered by [Bell] *and the Union* in line with past practice which is by mutual agreement." CBA § 96 (Def.'s App. 100) (emphasis added); 2009 CBA § 2 (Def.'s App. 192). In other words, Bell is not free to alter existing jobs unilaterally, and existing classifications are defined by the parties' past practice.

The Award reasons that "if Appendix B were read as [Bell] suggests, any or all bargaining unit work could be assigned outside the bargaining unit. In such case, the Union would be severely diluted or destroyed. It is highly doubtful that the parties intended such a result in agreeing to Appendix B." Award 13 (Def.'s App. 13). This rejection of Bell's favored interpretation is not contrary to any unambiguous statement in the CBA. Appendix B is not, as described above, unambiguous. *Cf. Beaird Indus.*, 404 F.3d 942 (holding that CBA unambiguously grants management right to subcontract to non-bargaining-unit employees where CBA grants that right and does not in any way restrict it). In interpreting the CBA in a manner contrary to Bell's interpretation, the Arbitrator did not exceed his authority to interpret the CBA, and he did not run afoul of any express CBA provision. *Cf. Nat'l Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 147 F.3d 399, 404 (5th Cir. 1998) ("The arbitrator specifically addressed the effect of the management rights clause on the parties' dispute and concluded that, although the provision gives management scheduling rights, it does not allow management to exercise those rights 'as a vehicle for the wholesale reduction of the wage bargain.'") Moreover, while the Award does not expressly declare the

CBA's terms to be ambiguous, "arbitrators need not explicitly state that they find a clause ambiguous." *Folger Coffee*, 905 F.2d at 111.

Because of this ambiguity, The Court concludes that the Arbitrator did not violate the plain text of Appendix B when he concluded that Bell violated the CBA by transferring duties from the CSS Group to the PBL Group. *Cf., e.g.*, *Weber Aircraft*, 253 F. 3d at 824 (enforcing arbitrator's "plausible" interpretation of CBA); *Nat'l Gypsum*, 147 F. 3d at 405 (concluding that, where provisions of CBA conflicted, "the arbitrator had the authority to resolve this conflict in favor of the Union.").

   *3. Conclusion as to the Award's Relationship to the CBA's Plain Text.* – The Court determines that the Award comports with the plain text of the CBA. The Award is accordingly not unenforceable on the grounds that the Arbitrator ignored any unambiguous term in the CBA.

   ***B.  The Cease and Desist Remedy Is Not Impermissibly Vague or Ambiguous***

   Bell next asserts that the Award is too vague and ambiguous to be enforced. A court may not enforce an arbitration award that is "ambiguous in its scope or application." *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003) (citing *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division*, 481 F.2d 821, 824 (5th Cir. 1973)). Moreover, "[a] court may not interpret the award in order to resolve the ambiguity and implement the award." *Id.* An award that does not spell out every detail of application, however, is not necessarily too ambiguous to be enforced. *See, e.g.*, *Brown*, 340 F.3d at 216 ("Generally speaking, an arbitration award for 'full back pay' is not ambiguous on its face simply because

it fails to address whether the award is to be offset by a grievant's interim earnings or a grievant's failure to mitigate his damages by taking reasonable steps to seek interim employment.") (citing *Int'l Chem. Workers Union, Local 683C v. Columbian Chems. Co.*, 331 F.3d 491, 498-99 (5th Cir. 2003)).

According to Bell, the Award does not state which of the CSS Group's duties Bell improperly transferred to the PBL Group. The Cease and Desist Remedy declares that "[Bell] shall cease and desist from having CSS duties performed outside the bargaining unit." Award 14 (Def.'s App. 14). The Award thus unambiguously states that all duties that were once performed by the CSS Group but that are now being performed by the PBL Group – or by any other group outside the bargaining unit, for that matter – are being performed invalidly. Nowhere does Bell explain why the phrase "all CSS duties" is in fact vague or ambiguous: to the extent that the PBL Group is performing duties formerly or currently performed by the CSS Group, the PBL Group must cease performing those duties. And the Arbitrator provided still more guidance, pointing out that Bell itself "wrote job specifications to evaluate and set rates for the tasks performed by the CSS group that included specific job duties belonging to the F-361 job code, which stated the tasks [to be performed] by the bargaining unit employees." Award 2 (Def.'s App. 2). Per the terms of the Award, then, Bell's own job specification for the CSS Group sets out the duties that the CSS Group performs, and therefore that the PBL Group cannot perform. The Court accordingly concludes that the Cease and Desist Remedy is not vague or ambiguous.

The Court concludes that the Cease and Desist Remedy does not conflict with the express terms of the CBA and is not impermissibly vague or ambiguous. As Bell raises no other objections to this portion of the Award, the Court finds that the Cease and Desist Remedy is enforceable.

### III.  THE ATTORNEYS' FEES REMEDY IS UNENFORCEABLE

Bell challenges the Attorneys' Fees Remedy as exceeding the Arbitrator's authority under the CBA. The CBA states that the arbitrator of a dispute "shall have no power to add to or subtract from or modify any of the terms of this agreement or any other agreement made supplementary hereto." 2006 CBA § 32 (Def.'s App. 26); 2009 CBA § 32 (Def.'s App. 129). The Award notes that the CBA does not expressly provide for attorneys' fees and that "[o]rdinarily, a collective bargaining contract must permit such a remedy for it to be . . . appropriate in an arbitration setting." Award 13 (Def.'s App. 13). Nevertheless, the Arbitrator determined that the Cease and Desist Remedy was inadequate to address Bell's violation of the CBA, and that consequently "an award for attorneys' fees is an appropriate remedy in this case." *Id.* 13-14.

An arbitration award cannot contradict an unambiguous CBA provision. *Resolution Performance Prods.*, 480 F.3d at 764-65. The CBA's silence as to fees is not an unambiguous prohibition on an award of such fees, but the CBA's express provision that an arbitrator "shall have no power to add to . . . or modify any of the terms of this agreement" is an unambiguous limitation on the Arbitrator's authority. By awarding attorneys' fees, he

exceeded that authority, and this remedy thus conflicts with an unambiguous CBA provision. The Court accordingly finds that the Attorneys' Fees Remedy is unenforceable.[3]

### IV. THE UNION IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF BELL'S AFFIRMATIVE DEFENSES

Bell asserts two affirmative defenses: that this action is barred by the doctrine of unclean hands, and that the Union failed to exhaust all available contractual and administrative remedies before filing this lawsuit.[4]

Bell first maintains that the doctrine of unclean hands bars the Union's suit because the Union's interpretation of the Award is unreasonable. Bell asserts that the Union's interpretation of the award is that "all of the work performed by PBL employees must be shifted to the Union-covered CSS[ Group]." Def.'s Mot. Summ. J. and Resp. to Pl.'s Mot. Summ. J. 30. Nowhere in its filings, however, has the Union asserted this interpretation: the Union rather, takes the more reasonable position that, as the Award states, Bell should

---

[3]Bell also argues that the Attorneys' Fees Remedy violates an unambiguous CBA provision requiring that "[i]n no case will the financial liability on any grievance extend beyond six (6) months after the date of original filing." 2006 CBA § 30A (Def.'s App. 25); 2009 CBA § 30A (Def.'s App. 128). As the Attorneys' Fees Remedy is unenforceable, the Court need not address this argument.

[4]In its answer, Bell asserted eight affirmative defenses: that (1) the complaint fails to state a claim; (2) the arbitrator acted outside the CBA's scope; (3) the Award does not draw its essence from the CBA; (4) the Arbitrator ignored the CBA's plain language; (5) the Award is vague and ambiguous; (6) the Award is insufficiently clear to be enforceable; (7) the Union failed to exhaust its contractual and administrative remedies; and (8) this action is barred by laches, estoppel, and unclean hands. The first six defenses rehash Bell's arguments addressed above, and the latter two the Court addresses below. Bell appears not to press its laches and estoppel arguments here, and, in any event, the Court determines that they are not supported by the evidence in the record and finds that the Union is entitled to summary judgment as to those two defenses.

transfer any CSS duties performed by the PBL Group back to the CSS Group.  *E.g.*, Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 16.  Even assuming that an unreasonable interpretation of the Award could be the basis for finding unclean hands in this case, Bell's argument fails nonetheless.

Bell's final argument is that the Union did ask the Arbitrator to clarify the Award before filing this suit.  The CBA states as follows: "[A]ny issue involving interpretation and/or application of any term of this agreement may be initiated by either party directly with the other party.  Upon failure of the parties to agree, it may then be appealed directly to the Arbitrator for decision."  2006 CBA § 36 (Def.'s App. 27); *see also* 2009 CBA § 36 (Def.'s App. 130) (similar but not identical text).  The Union, however, is seeking *enforcement* of the Award, not interpretation or application.  It asks the Court to enforce the Award on its terms, and the CBA does not require appeal to the Arbitrator before seeking such a remedy.

Because there is no genuine dispute as to any material fact regarding Bell's affirmative defenses, the Union is entitled to summary judgment as to both.

### V.  THE UNION IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES INCURRED IN THIS ACTION

The Union also seeks to recover its attorneys' fees for litigating this action.  In a suit to enforce an arbitration award, the prevailing party is entitled to fees when the other party "has refused to abide by [the] arbitration decision 'without justification.'" *Bruce Hardwood Floors*, 103 F. 3d at 453 (quoting *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co. ("Tex. Steel II")*, 639 F.2d 279, 283 (5th Cir. Unit A 1981)).  An

ORDER – PAGE 14

unsuccessful challenge to an arbitration award is not automatically "without justification." *Tex. Steel II*, 639 F.2d at 283.

Bell's challenge to the Cease and Desist Remedy, though the Court rejected it, was not entirely without justification. Moreover, Bell was correct to challenge the Attorneys' Fees Remedy as in conflict with the express terms of the CBA. The Court accordingly declines to award the Union attorneys' fees.

## CONCLUSION

The Court grants in part and denies in part both parties' motions for summary judgment. The Court grants the Union's motion as to the Cease and Desist Remedy and Bell's affirmative defenses. The Court grants Bell's motion as to the Attorneys' Fees Remedy. The Court denies the remainder of both motions. Accordingly, the Court (1) enforces the Arbitrator's determination that Bell must cease and desist from having CSS duties performed outside the bargaining unit and (2) declines to enforce the Arbitrator's award of attorneys' fees to the Union.

Signed October 16, 2012.



David C. Godbey
United States District Judge

ORDER – PAGE 15